[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO DISMISSFIRST COUNT OF INTERVENING COMPLAINT
This case arises out of an incident which took place at the West Indian Social Club ("Club") in Hartford, Connecticut on August 16, 1992. According to the original Complaint of plaintiff Kieasha S. Martin, which was filed with this Court on August 2, 1993, the incident occurred as follows:
On or about 1:06 A.M. on August 16, 1992, while the CT Page 1610 plaintiff was a patron at the Club, she was struck in the head and seriously injured by another Club patron, identified only as an "unnamed black woman," who threw a beer bottle in her direction. Complaint, ¶¶ 1, 3. The unidentified woman who assaulted her was intoxicated, both at the time she threw the bottle and earlier in the evening, when the Club's backer/president, Keith L. Carr, its permittee, Leslie N. Kerr, their servants, agents or employees and/or agents, servants or employees of the Club sold her alcoholic liquor.Id., ¶¶ 5, 6. Against this background, the plaintiff claims that she suffered her complained-of injuries "in consequence
of" the woman's intoxication, id., ¶ 9, and thus that she was entitled to recover "just damages" for her injuries from defendants Carr, Kerr and the Club under Connecticut's Dram Shop Act, General Statutes § 30-102.[1]
On February 15, 1994 — nearly eighteen months after the incident here in question and over six months after plaintiff Martin filed her Complaint — one Joseph Boulay moved this Court for permission to "intervene" in this case. In support of his Motion to Intervene, Mr. Boulay represented that he too was hurt in the bottle-throwing incident which underlies Ms. Martin's complaint, and thus that judicial economy would be served by allowing him to "intervene" in her pending lawsuit. The Court, Hale, J., presiding, granted Mr. Boulay's Motion to Intervene on February 28, 1994.
In his Intervening Plaintiff's Complaint ("I.C.P."), Boulay alleges that at approximately 1:00 A.M. on August 16, 1992, he was a patron of the West Indian Social Club when "another patron of the . . . Club began throwing bottles of beer across the dance floor." I.C.P., Count I, ¶¶ 1, 4. When "[s]aid beer bottles shattered," claims Boulay, "flinging glass onto a number of patrons and causing other patrons to fall on the broken glass[,]" id., ¶ 5, "[a] shard of glass hit [him], causing [him] physical injuries . . .," id., ¶ 6, including "a severe laceration of the neck." Id., ¶ 9. Boulay further claims that, "On the evening in question, and prior to [his] injury, the party who threw the beer bottle which injured [him] had been sold alcoholic liquor by the defendant permittee [Leslie N. Kerr], the defendant backer/president [Keith L. Carr], their servants, agents or employees, and/or agents, servants or employees of the defendant West Indian Social Club[,]" id., ¶ 7, "while said party was intoxicated."Id., ¶ 8. Contending on that basis that he suffered his CT Page 1611 complained-of injuries "in consequence of" the bottle-throwing party's intoxication, Boulay seeks in the First Count of his intervening complaint[2], to recover "just damages" from all three original defendants — Mr. Carr, Ms. Kerr and the Club — under the provisions of Section 30-102. Boulay alleges that written notice of his intention to pursue a Dram Shop action against the defendants was given to defendant Kerr within 60 days of the occurrence of his injuries.
On October 24, 1994, the defendants moved this Court under Section 142 et seq. of the Connecticut Practice Book to dismiss the First Count of Mr. Boulay's intervening complaint. As grounds for their Motion, the defendants claim that this Court lacks subject-matter jurisdiction over the intervening plaintiff's Dram Shop claim because: first, said claim was not brought within one year of the act or omission complained of, as required by the provisions of Section 30-102; and second, the statutory notice which the plaintiff gave to defendant Kerr was legally insufficient, since it failed to name the particular intoxicated person to whom the actionable sale of alcoholic liquor is alleged to have been made on the evening in question. For the following reasons, the Court concludes that the First Count of the intervening complaint must indeed be dismissed because the claim therein presented was untimely filed.
 I.
Under Practice Book § 142,
 Any defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so within thirty days of the filing of an appearance.
Failure to file a motion to dismiss within the thirty-day period prescribed by Section 142 operates as a waiver of the defendant's jurisdictional challenge under Practice Book § 144, unless the challenge is to lack of jurisdiction over the subject matter of the claim or cause of action, which "cannot be waived[.]" Practice Book § 145. Indeed, Practice Book Section 145 expressly provides that "whenever it is found after suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall CT Page 1612 dismiss the action."
 II.
To decide whether a time limitation set forth in a statute is subject to waiver, the Court must determine whether the limitation is substantive or procedural. Ecker v. WestHartford, 205 Conn. 219, 231, 530 A.2d 1056 (1987).
 "`A statute of limitations is generally considered to be procedural, especially where the statute contains only a limitation as to time with respect to a right of action and does not itself create the right of action. Jones Destruction, Inc. v. Up-John, 161 Conn. 191, 195, 786 A.2d 308 (1971).' Collucci v. Sears, Roebuck Co., 585 F. Sup. 529, 532
(D. Conn. 1984)." Moore v. McNamara, [201 Conn. 16,] 22 [, 513 A.2d 660 (1986)]. Where the limitation is deemed procedural and personal it is subject to being waived unless it is specifically pleaded because the limitation is considered merely to act as a bar to a remedy otherwise available. [Citation omitted.] Where, however, a specific time limitation is contained within a statute that creates a right of action that did not exist at common law, then the remedy exists only during the prescribed period and not thereafter. [Citations omitted.] In such cases, the time limitation is not to be treated as an ordinary statute of limitations, but rather is a limitation on the liability itself, and not of the remedy alone. [Citations omitted.] The courts of Connecticut have repeatedly held that, under such circumstances, the time limitation is a substantive and jurisdictional prerequisite, which may be raised at any time, even by the court sua sponte, and may not be waived. See Moore v. McNamara, supra, 23; Orticelli v. Powers, [197 Conn. 9, 15, 495 A.2d 1023 (1985)]; American Masons' Supply Co. v. F.W. Brown Co., [174 Conn. 219, 224, 384 A.2d 378
(1978)]; L.G. DeFelice Son, Inc. v. Wethersfield, [167 Conn. 509, 511, 356 A.2d 144 (1975)]; Diamond National Corporation v. Dwelle, [164 Conn. 540, CT Page 1613 547, 325 A.2d 259 (1973)]; Wilbur v. Mount Sinai Medical Center, 3 Conn. App. 284, 288, 487, A.2d 568 (1985).
Ecker v. West Hartford, supra, 231-233.
 III.
"In enacting [the Dram Shop Act,] the legislature created an action unknown to the common law." Pierce v. Albanese,144 Conn. 241, 249, A. (1957). No mere extension of any preexisting right of action to a new class of potential claimants, the statutory action created by the Dram Shop Act contains many special features which clearly distinguish it from claims which can be asserted at common law.
On the one hand, the Act expands the common-law rights of injured persons to seek relief from persons whose wrongful conduct may have harmed them. First, it authorizes persons injured by intoxicated tortfeasors to bring suit directly against those who sold the tortfeasors alcohol before their actions resulted in harm. By so doing, the Act partially abrogated the harsh common-law rule which prohibited such actions on the theory that the tortfeasor's voluntary consumption of the alcohol was the sole proximate cause of his own conduct, thereby cutting off the alcohol seller's liability for the injured person's damages. See generallyNelson v. Steffens, 170 Conn. 356, 358-363, A.2d (1976). Second, by making a seller of alcohol liable to just damages to any person injured in consequence of the intoxication of any intoxicated person to whom he sells alcohol, the Act relieves the injured person of his common-law burden of proving that his injuries were proximately caused by the defendant's actionable conduct, that is: by his sale of a particular drink to the intoxicated tortfeasor. Pierce v.Albanese, supra, 250-251.
On the other hand, the Act clearly restricts the injured person's right to recover damages from the seller of alcohol to an intoxicated person in ways not known to the common law. First, it restricts the total amount of damages which any alcohol seller can be required to pay for any statutory violation to a maximum of $20,000 per injured person, up to an aggregate total of $50,000 per incident. Second, the Act conditions the plaintiff's right to pursue his limited CT Page 1614 statutory action upon the giving of timely written notice of his intention to file such an action within sixty days of the occurrence of the injury for which he seeks to recover. A plaintiff's failure to satisfy this statutory notice requirement deprives the court of subject-matter jurisdiction over his Dram Shop claim.
The third and final restriction on an injured person's right to pursue a Dram Shop action is the limitations provision here at issue. That provision, which appears as the last full sentence of the current version of the Act, reads as follows:
 No action under the provisions of this section shall be brought but within one year from the date of the act or omission complained of.
It is apparent that the language of this provision applies only to the cause of action which is created by the Dram Shop Act itself; hence the explicit internal reference to "action[s] under the provisions of this section," to which the limitations period in question is uniquely applicable. Because this limitations provision is "contained within a statute that creates a right of action that did not exist at common law, then the remedy exists only during the prescribed period and not thereafter." Ecker v. West Hartford, supra, 232. The provision therefore establishes a mandatory "substantive and jurisdictional prerequisite, which may be raised at any time, . . . any may not be waived." Id.
Failure to comply with that prerequisite thus deprives the Court of subject-matter jurisdiction over the plaintiff's Dram Shop claim.
In this case, Mr. Boulay filed his intervening complaint more than six months after the one-year limitations period prescribed by Section 30-102 had elapsed. The Court must therefore conclude that it lacks subject-matter jurisdiction over the Dram Shop claim presented in the First Count of the intervening complaint.
Accordingly,[3] the First Count of Mr. Boulay's intervening complaint is hereby dismissed.
Michael R. Sheldon, J. CT Page 1615